IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL TURNER and | ) | |
| JOANNA TURNER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:10cv1065-MHT |
| | ) | (WO) |
| REGIONS BANK, a domestic | ) | |
| corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiffs Michael and Joanna Turner bring this lawsuit against several defendants, including the Madison County Community Bank ("MCCB"), claiming violations of a bankruptcy-discharge injunction and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.  Currently before the court are MCCB's motion to dismiss for lack of personal jurisdiction and motion to stay discovery and initial disclosures pending resolution of the dismissal motion.  For the reasons that follow, the motions will be denied.

## I.  MOTION TO DISMISS

<u>Motion-to-dismiss  standard</u>:  In  considering  a defendant's  motion  to  dismiss  for  lack  of  personal jurisdiction where no evidentiary hearing is held, the plaintiff  need  only  establish  a  prima-facie  case  of jurisdiction by presenting evidence sufficient to defeat a motion for judgment as a matter of law.  <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990).  The burden for overcoming a motion for judgment as a matter of law is the same as that for overcoming a motion for summary judgment;  legally  sufficient  evidence  must  exist  to create a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Everett v. Napper</u>, 833 F.2d  1507,  1510  (11th  Cir.  1987).    "The  court,  in considering the motion, must take all allegations of the complaint  that  the  defendant  does  not  contest  as  true, and,  where  the  parties'  affidavits  conflict,  the  court must  construe  all  reasonable  inferences  in  favor  of  the plaintiff."  <u>South Alabama Pigs, LLC v. Farmer Feeders,</u>

2

<u>Inc.</u>, 305 F.Supp.2d 1252, 1257 (M.D. Ala. 2004) (Thompson, J.) (citation omitted).

<u>Factual background</u>:  In 2008, the Turners filed for Chapter 7 debt relief under Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Alabama.  On September 30, 2008, their debt was discharged.  Sometime before their filing, while domiciled in Florida, the Turners had applied for and received a loan from MCCB in Florida in order to purchase an automobile.  The loan was secured by a lien on the automobile.  At the time of the discharge of their debt, the Turners still owed $ 20,234.00 on their loan. As a creditor of the Turners, MCCB was listed on the Schedule D for creditors holding secured claims, and the debt owed them was discharged along with the Turners' other debts.  MCCB received notice of the Turners' bankruptcy through receipt of both the Bankruptcy Notice Center Certificate of Service-Meeting of the Creditors

3

and the Bankruptcy Notice Center Certificate of Service-Order of Discharge.[1]

The Turners allege that, despite having received notice of the their bankruptcy and the discharge of their debt, MCCB continued to try to collect on the debt.  In addition, they claim that MCCB reported the debt as outstanding to Equifax, a credit-reporting agency, thus lowering their credit score and making it more difficult for them to obtain financing and loans.  Both of these actions are violations of the bankruptcy-discharge injunction.

<u>Discussion</u>: The Turners assert two claims against MCCB: a debt-collection claim and a credit-reporting claim.

_____

1.   Section 341 of the Bankruptcy Code mandates that the United States trustee in a bankruptcy proceeding convene a meeting of creditors "[w]ithin a reasonable time after the order for relief" is given.  11 U.S.C. § 341.  Section 727 of the code governs when and how a court should grant a debtor discharge of his or her debts.  11 U.S.C. § 727.  Once a debtor's debts are discharged, the bankruptcy court serves all creditors with a form titled "Discharge of Debtor."

When a defendant challenges personal jurisdiction, a federal court must undertake a two-part analysis.  The court "must evaluate its jurisdiction under the state long-arm statute and then determine whether jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  <u>Cable/Home Communication Corp. v. Network Productions, Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990). Because, in Alabama, the limits of long-arm jurisdiction are coextensive with due process under the federal constitution, the court need undertake only one analysis. Rule 4.2, Ala. R. Civ. P.; <u>Frye v. Smith</u>, ___ So.2d _____, _____, 2011 WL 118260, at *9 (Ala. Jan. 14, 2011); <u>see also</u> <u>Clark v. Deal</u>, 2009 WL 902533, at *2 (M.D. Ala. Mar. 31, 2009) (Thompson, J.).  However, the inquiry must be conducted separately as to each claim.  <u>Seiferth v. Helicopteros Atuneros, Inc.</u>, 472 F.3d 266, 274 (5th Cir. 2006) (concluding that "specific personal jurisdiction [is] a claim-specific inquiry").

5

The due-process inquiry has two requirements.   The defendant must have sufficient "minimum contacts" with the forum State.   International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).   In addition, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice."   Id.

There are two types of personal jurisdiction: "general" and "specific."   There is general personal jurisdiction over a party when "the cause of action does not arise out of ... the [party's] activities in the forum State," but there are "continuous and systematic" contacts between the two.   Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). Specific jurisdiction is based on the party's contacts with the forum State that are related to the cause of action.   Id. at 414 n.8.   There is no allegation here that MCCB has had general contacts with Alabama unrelated to this lawsuit.   Thus, the only issue is whether

6

asserting specific personal jurisdiction over MBBC comports with due process.

For specific personal jurisdiction, the contacts at issue must satisfy the minimum-contacts test. "Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that [it] reasonably anticipate being haled into court there." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996) (citation omitted). The minimum-contacts analysis is related to the requirement of the Due Process Clause that "individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal

7

citations omitted).  This is because a defendant who has "purposefully directed his activities at residents in the forum," such that "the litigation results from alleged injuries that arise out of or relate to those activities," can expect to be liable to suit in that forum.  Id. (internal citations omitted).

With regard to the Turners' debt-collection claim, MCCB responds that it made a loan to the Turners in the State of Florida, on a vehicle located in Florida, and that the Turners "did not relocate to the State of Alabama until after the loan was made and without consulting MCCB."  Def.'s Br. at 5 (Doc. No. 16). Therefore, MCCB says, "There is no allegation that MCCB was purposely directing its activities to the State of Alabama and MCCB could not reasonably anticipate being haled into an Alabama court because of a loan it made in the state of Florida."  Id.  However, MCCB does not deny the Turners' allegations that it attempted to collect a

discharged debt.[2]  The evidence is sufficient to support
the conclusion that the Turners' debt-collection claim
arises out of MCCB's contact with Alabama, since the
Turners were living in Alabama during their bankruptcy
and after the debt was discharged, which means that any
debt-collection notices were received in Alabama; and
that MCCB had notice of the Turners' change of domicile
and knew that the bankruptcy was adjudicated in the

_____

2.  MCCB does not address the Turners' debt-
collection claim at all, devoting their briefing and
supporting evidence to the credit-reporting claim
instead.  This may be because it is unclear from the
complaint whether the Turners allege that MCCB attempted
to collect a discharged debt.  None of the facts in the
complaint relates to such an allegation.  However, Count
Two clearly charges MCCB with "Willful Violation of the
Discharge Injunction Attempting to Collect a Discharged
Debt," and the Turners allege that the defendants listed,
including MCCB, "attempt[ed] to collect a debt that arose
prior to and was discharged in Plaintiffs' bankruptcy
case."  Comp. ¶ 35 (Doc. No. 1).  MCCB's submitted
affidavit does not deny that it attempted to collect the
debt from the Turners after they had moved to Alabama,
such that it has submitted no evidence denying contact
with Alabama as to that claim.  Therefore, the court will
view the evidence in the light most favorable to the
Turners and assume that they received debt-collection
notices in Alabama.  See South Alabama Pigs, 305
F.Supp.2d at 1257.

Middle District of Alabama, because it received the Certificates of Service for the Meeting of Creditors and Discharge.

The Turners have not specified in what format MCCB sent the collection notices.  However, whether they were sent by regular mail, email, or telephone, they would constitute an act directed at the State of Alabama, whose repercussions would be felt in this State.  In addition, the evidence is sufficient to support the conclusion that MCCB sent the notices with the expectation--or at least the hope--that they would incur a monetary benefit if and when the Turners paid their debt, which also has bearing on a minimum-contacts analysis.  See Reliance Nat. Indem. Co. v. Pinnacle Cas. Assur. Corp., 160 F.Supp.2d 1327, 1333 (M.D. Ala. 2001) (De Ment, J.) ("E-mails, like letters and phone calls, can constitute minimum contacts, at least if the defendant or his agents send the message for pecuniary gain rather than substantially personal purposes."); University of South Alabama v. Southern Farm

Bureau Cas. Ins. Co., 2005 WL 1840238, at *8 (S.D. Ala.
July 27, 2005) (Cassady, M.J.) (finding minimum contacts
satisfied where an insurance company sent letters into
Alabama, spoke to a resident of Alabama over the phone at
least once, had a contract executed in its favor by a
lawyer in Alabama, and sent a check to Alabama with the
contract to settle a claim, such that "The foregoing
activities by [the defendant] were directed toward
Alabama and arguably resulted in injury to [the
plaintiff]").

In Ruiz de Molina v. Merritt & Furman Ins. Agency,
Inc., the Eleventh Circuit Court of Appeals found
sufficient minimum contacts with Alabama where the
defendant insurance brokers had no "direct contact
whatsoever with ... Alabama." 207 F.3d 1351, 1357 (11th
Cir. 2000). It was sufficient that the defendants did
business with an Alabama resident, "expected to receive
a benefit from that business," knew that the insurance at
issue was for a boat in Alabama, authorized sending a

11

binder for the insurance to Alabama, and received a commission from the sale of the insurance.  Id.

Here, unlike in Ruiz de Molina, the evidence is sufficient to support the conclusion that MCCB did have direct contact with the State.  By contacting the Turners in Alabama to collect a debt that was discharged by a bankruptcy court in this State, MCCB "purposefully directed [its] activities at residents of the forum." Burger King, 471 U.S. at 472.  In addition, the fact that the Turners' debt was discharged in Alabama should have provided MCCB with "fair warning" that, should it violate the discharge injunction and continue to try to collect on the Turners' debt, as they allege, it could be subject to legal action here.

The foregoing analysis also supports a finding that MCCB purposefully availed itself of the privilege of doing business in Alabama and should have anticipated being haled into court here, such that all three of the minimum-contacts criteria are satisfied.  While the loan

12

to the Turners was made in Florida, MCCB, by attempting to collect on it in Alabama, was doing business in this State and ostensibly would have expected the laws of Alabama to protect its activities. See Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). Furthermore, as already stated, MCCB's actions should have put it on notice that it could be haled into an Alabama court if those actions were illegal. See Brannon v. Finance America, LLC, 483 F.Supp.2d 1136, 1139 (M.D. Ala. 2007) (Thompson, J.) (stating that "where a defendant directs its behavior toward an individual or individuals in a particular State, and knows that the effect of the action will be felt in that State, the defendant must 'reasonably anticipate being haled into court there.'") (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

13

Consequently, the evidence is sufficient to support the conclusion that specific personal jurisdiction over MCCB is proper because of its minimum contacts with the State of Alabama in regards to collecting a discharged debt.

With regard to the Turners' credit-reporting claim, MCCB's alleged actions satisfy the minimum-contacts analysis as well.  MCCB states that it "did make reports concerning the Loan to [credit-reporting agency] EQUIFAX, but such reports were only made to EQUIFAX at its offices located in Atlanta, Georgia."  Def.'s Ex. A ¶ 28 (Doc. No. 16-1).  MCCB argues that, because Equifax is "a Georgia limited liability company" and the reports were made in Georgia, it "had no reason to believe it would be sued in the state of Alabama."  Id. ¶¶ 27-28.

To support its argument, MCCB cites Lockard v. Equifax, Inc., 163 F.3d 1259 (11th Cir. 1998).[3]  There,

---

3.  MCCB notes that Lockard is a case dealing with the Georgia long-arm statute, as opposed to that of Alabama, but says this "should not affect Lockard's usefulness as precedent," because "the Eleventh Circuit Court of Appeals has recognized that both Georgia and
(continued...)

_____

3.   (...continued)

Alabama long arm jurisdiction statutes are interpreted the same way." Mot. at 7 (Doc. No. 16).  MCCB then cites Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249 (11th Cir. 2010), as support for its argument.   In Diamond Crystal Brands, the Eleventh Circuit did acknowledge that, "For many years, our court has followed the interpretation that Georgia's long arm statute confers in personam jurisdiction to the maximum extent allowed by the due process clause of the federal Constitution."   593 F.3d at 1258 (internal quotation marks and citation omitted).   However, what MCCB failed to disclose, whether through negligence or purposefully, was that the court in Diamond Crystal Brands went on to renounce that interpretation of Georgia's long-arm statute:

> "We conclude that, through Innovative Clinical[ & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa, 620 S.E.2d 352 (2005)], the Georgia Supreme Court has demonstrated that our previous approach is an incorrect statement of Georgia law: the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process. Instead, the long-arm statute must be read literally. It imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."

Id. at 1259.  Thus, through Diamond Crystal Brands, the Eleventh Circuit recognized that the Alabama and Georgia

(continued...)

15

the appellate court upheld dismissal based on lack of personal jurisdiction in Georgia over a debt-collection agency whose only contact with the State was sending debt information to Equifax in Georgia. Id. at 1266. While Lockard initially seems to be quite similar to the present case, there are some important differences. First, the plaintiff in Lockard was not attempting to establish jurisdiction in the State in which he lived and thus ostensibly felt the main repercussions of the defendant's actions.[4] Here, the Turners are attempting to

_____

3.   (...continued)
long-arm statutes are not "interpreted the same way," as MCCB claims.  While this fact does not affect the court's overall analysis or conclusions, MCCB's lack of diligence and transparency is not appreciated.

4.   It is not apparent from the Lockard opinion where exactly the plaintiff and each of the defendants were located.  The court does state that the district court dismissed six of the defendants, including the debt-collecting agency, for lack of personal jurisdiction based in part on the fact that none of them was located in Georgia.  163 F.3d at 1263.  This court infers that the plaintiff was domiciled in Louisiana, as he had also filed a state suit in Louisiana based on the same injuries, had unsuccessfully attempted to have his federal case moved to Louisiana, and his wife had sought
(continued...)

bring suit against MCCB in Alabama, the State where they live and have experienced the effects of a bad credit report.  Furthermore, in <u>Lockard</u>, the court upheld a finding "that [the defendant's] only contact with Georgia was sending a computer tape to Equifax in Georgia, that [the defendant] neither paid for nor was paid for the tape, and that this activity did not amount to a purposeful availment of the privileges of conducting business in Georgia."  <u>Id</u>. at 1265.  In contrast, the Turners allege that MCCB has "park[ed]" its account on one of their credit reports "so that [they] will be forced to pay off the balance in order to obtain refinancing, qualify for a loan, or increase [their] credit score from the artificially lowered score."  Comp. ¶ 19 (Doc. No. 1).  Therefore, MCCB allegedly did hope to receive pecuniary gain from business with a resident of

---

4.  (...continued)
treatment at the Baton Rouge Medical Center.  <u>Id</u>. at 1262, 1267.  At most, it is clear only that the plaintiff's son lived in Georgia, <u>id</u>. at 1263; nothing is mentioned of the plaintiff's connection to the State.

17

the State of Alabama--payment from the Turners of the discharged debt--by reporting the debt to Equifax.

Rather than Lockard, Ruiz de Molina is again an instructive case here.  Neither MCCB nor the defendant in Ruiz de Molina had direct contact with the forum State, Alabama.  207 F.3d at 1357.  However, MCCB "expected to receive a benefit" from reporting the debt to Equifax, id.; it knew it was reporting a debt allegedly owed by Alabama residents; and, as such, it knew that its actions would have repercussions in Alabama.  As the Ruiz de Molina court explained, "The Supreme Court has held that a nonresident defendant may be subject to specific jurisdiction even if his actions giving rise to the suit occurred outside the forum State and he had no direct contact with the plaintiff."  Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)).  Much as World-Wide Volkswagon held that due process is satisfied if a State "asserts personal jurisdiction over a corporation that delivers its products into the stream

18

of commerce with the expectation that they will be purchased by consumers in the forum State," 444 U.S. at 298, the evidence is sufficient to support the conclusion here that MCCB delivered notice of an outstanding debt into the stream of commerce knowing that it would affect residents of Alabama and hopefully induce payment from Alabama.

Perhaps most importantly, the evidence is sufficient to support the conclusion that MCCB should have known that notifying Equifax of the Turners' debt violated a discharge injunction issued in the State of Alabama and could cause MCCB to be haled into court here.  This fact provided them with the requisite fair warning that their actions could have repercussions in Alabama.  MCCB's violation of the discharge injunction is also the basis of the Turners' claim, with the result that the Turners' "claim arises out of [MCCB's] forum-related activities" in satisfaction of specific jurisdiction. Ruiz de Molina at 1357 ("Since plaintiff's claim arises out of

19

defendants' forum-related activities ... jurisdiction over them for this specific claim is appropriate."); Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1222 (11th Cir. 2009) ("[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum.") (quoting Burger King, 471 U.S. at 472).  Thus, although MCCB notified Equifax of a debt in Georgia, it knew that notification violated a discharge injunction issued in Alabama, concerned residents of Alabama, and would have repercussions in Alabama.  MCCB also anticipated transacting business with Alabama residents as a result of the debt report, thereby purposefully availing itself of the privilege of conducting business within Alabama. The evidence is therefore sufficient to support the conclusion that both minimum contacts and fair warning are satisfied as to the Turners' debt-collection claim.

20

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320). See also Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 857 (11th Cir. 1990). This inquiry requires that the court "consider such factors as the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Brannon, 483 F.Supp.2d at 1141 (citing Burger King, 471 U.S. at 477).

21

Here, the evidence is sufficient to support the conclusion that all factors indicate that this case is best adjudicated in Alabama. The Turners are now Alabama residents, so they obviously have a strong interest in their case being adjudicated in this State. As MCCB is located in nearby Florida, it is not a heavy burden for its representatives to travel to Alabama, especially since modern methods of communication have greatly reduced the expense and amount of actual travel required of out-of-state defendants. McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957) ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."). Since the Turners' bankruptcy was adjudicated in Alabama and the debt at issue discharged here, this State also has an interest in resolving the present dispute. Finally, it is more convenient for the Turners and more efficient for the interstate judicial system to resolve all claims

related to their discharged debts in one action, rather than parceling them among multiple courts. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114 (1987). Especially since those burdens are not serious here, jurisdiction over MCCB is fair for both the Turners' debt-collection and credit-reporting claims.

When "resolving constitutional problems of personal jurisdiction, as elsewhere, important constitutional questions prove themselves immune to solution by checklist, and each case must be decided on its own facts." Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1058 (11th Cir. 1986) (internal quotation marks and citation omitted). Based on the facts alleged by the Turners, the assertion of specific personal jurisdiction over MCCB is proper in this case

23

for both the Turners' debt-collection and credit-reporting claims. Therefore, MCCB's motion to dismiss for lack of personal jurisdiction will be denied.

## II. MOTION TO STAY

In light of the fact that MCCB's dismissal motion has been resolved, the court sees no reason to stay the proceedings in this case. The stay motion will be denied.

### ***

Accordingly, it is the ORDERED that defendant Madison County Community Bank's motion to dismiss for lack of personal jurisdiction (Doc. No. 16) and motion to stay (Doc. No. 17) are denied.

DONE, this the 28th day of February, 2011.

  /s/ Myron H. Thompson  
**UNITED STATES DISTRICT JUDGE**